J-S95002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: I.L.M., A MINOR<br>IN THE INTEREST OF: K.L.M., A MINOR<br>IN THE INTEREST OF: A.N.M., A MINOR | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| v. | |
| APPEAL OF: T.T.M., MOTHER | |
| | Nos. 1612 EDA 2016, 1613<br>EDA 2016, 1614 EDA 2016 |

Appeal from the Decree Entered April 26, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at Nos: CP-51-AP-0000706-2014, CP-51-AP-0000707-2014,
CP-51-AP-0000708-2014

BEFORE: STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 10, 2017**

Appellant, T.T.M., appeals from the April 26, 2016 decrees terminating her parental rights to her three children, I.L.M. (born in 2010), K.L.M. (born in 2008), and A.N.M (born in 2006). We affirm.

The trial court recited the following facts and procedural history:

> On August 30, 2011, DHS [Department of Human Services] received a Child Protective Service (CPS) report alleging that on August 26, 2011, [I.L.M.] was taken to the Children's Hospital of Philadelphia (CHOP) after ingesting an unknown medication. [I.L.M.] was previously hospitalized on June 26, 2011 after ingesting medication. [I.L.M.] was admitted to the Intensive Care Unit (ICU) on both occasions. [I.L.M.] would need follow-up medical treatment. The report further indicated that [Appellant] had a history of failing to take the children to their scheduled medical appointments. The report was indicated.

On October 24, 2011, In-Home Protective Services (IHPS) were implemented for the family.

On December 2, 2011, [A.N.M.] suffered a seizure. [Appellant] was reluctant to take [A.N.M.] to the hospital and only did so after being instructed by the IHPS social worker.

On December 5, 2011, DHS learned that [A.N.M.] was in need of medical examinations by a specialist. [Appellant] failed to schedule any medical appointments for the child.

On March 5, 2012, DHS filed urgent petitions on behalf of [A.N.M.]. [Appellant] was non-compliant with IHPS. [Appellant] was frequently unavailable for scheduled visits. Furthermore, [Appellant] failed to provide [A.N.M.] with appropriate and timely medical care.

On April 13, 2012, an adjudicatory hearing was held before the Honorable Jonathon Q. Irvine. Judge Irvine adjudicated [A.N.M.] dependent and ordered DHS to supervise the family. Physical custody remained with [Appellant].

On September 6, 2012, a Permanency Review Hearing was held before the Honorable Jonathon Q. Irvine. DHS learned that [Appellant] did not follow the medical recommendation for [A.N.M.]. Furthermore, she did not attend parenting classes. Subsequently, Judge Irvine committed [A.N.M.] to the care and custody of DHS.

On November 4, 2012, IHPS was implemented with the family to ensure that the children, [K.L.M.] and [I.L.M.] were adequately supervised and their medical needs were being met.

On February 14, 2013, DHS visited the family home and determined the condition of the home was inappropriate for the child [sic] to remain.

On February 15, 2013, DHS obtained an Order of Protective Custody (OPC) for [K.L.M.] and [I.L.M.].

On February 18, 2013, a shelter care hearing was held before Master Joseph Fernandes. Master Fernandes lifted the OPC and ordered the temporary commitment of the children to the care and custody of DHS.

On February 26, 2013, an adjudicatory hearing was held before the Honorable Jonathon Q. Irvine. Judge Irvine adjudicated [K.L.M.] and [I.L.M.] dependent and committed them to the care and custody of DHS.

The matter was listed on a regular basis before Judges of the Philadelphia Court of Common Pleas—Family Court Division—Juvenile Branch pursuant to [the Pennsylvania Juvenile Act, 42 Pa.C.S.A. § 6351] and evaluated for the purpose of determining or reviewing the permanency plan of the children.

In subsequent hearings, the DRO's [sic] reflect the court's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On January 6, 2015, March 29, 2016, and April 26, 2016 a Termination of Parental Rights hearing for [Appellant] was held in this matter.

On April 26, 2016, the court found by clear and convincing evidence that [Appellant's] parental rights of [I.L.M.], [K.L.M.], and [A.N.M.] should be terminated pursuant to the Pennsylvania Juvenile Act. Furthermore, the court held that it was in the best interest of the children that the goal be changed to adoption.

Trial Court Opinion, 6/30/2016, at 2-3.

On review of an order terminating parental rights, we must accept the trial court's findings of fact and credibility determinations so long as the record supports them. *In re S.P.*, 47 A.3d 817, 826 (Pa. Super. 2012). Where the record supports the trial court's findings, we may reverse only for an abuse of discretion or error of law. *Id.* An abuse of discretion occurs where the trial court's decision is manifestly unreasonable, or results from partiality, bias, prejudice, or ill will. *Id.*

The party seeking termination of parental rights must prove by clear and convincing evidence that grounds exist under 23 Pa.C.S.A. § 2511(a)

and (b). *Id.* at 827. "[C]lear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa. Super. 2002).

Here, the trial court found termination of Appellant's parental rights warranted under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) and (b).[1] We

_____

[1] **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

[…]

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

*(Footnote Continued Next Page)*

will affirm the trial court's decision so long termination is warranted under any one subsection of § 2511(a). ***In re J.E.***, 745 A.2d 1250, 1255 (Pa. Super. 2000). We will confine our analysis to § 2511(a)(1), which applies where a parent refuses or fails to perform parental duties.

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

*(Footnote Continued)* _____

[…]

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[…]

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 5111.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citing *In re Burns*, 379 A.2d 535 (Pa. 1977)), *appeal denied*, 872 A.2d 1200 (Pa. 2005). .

Further:

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (internal citations omitted).

If the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights under § 2511(a)(1), the court must also consider the parent's explanation for his or her conduct and the post-abandonment contact between the parent and child. *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008).

The record supports the trial court's findings, set forth above, that Appellant failed to provide adequate supervision and housing, and failed to attend to the children's various medical needs. In addition, the record

reveals that Appellant did not meet the goals DHS set for her in her Family Service Plan ("FSP"). In particular, Appellant failed to obtain appropriate housing and eventually moved in with the children's maternal grandmother. N.T. Hearing, 1/6/15, at 64; N.T. Hearing, 3/29/16, at 7-8. She did not maintain employment. N.T. Hearing, 1/6/15, at 48-49. Appellant attended only two of eleven scheduled visits in the six months prior to the termination petition. *Id.* at 39-40. During the entire period of the children's placement, Appellant attended 27 of 78 scheduled visits. *Id.* at 40. Appellant completed an anger management course, but continued to exhibit anger issues. *Id.* at 47-48, 65, 71. The trial court ordered Appellant to undergo a second anger management course, but Appellant failed to comply. *Id.* at 39, 58; N.T. Hearing, 3/29/16, at 19. Appellant also failed to document any compliance with mental health therapy and genetic disorder counseling. *Id.* at 50-53, 69-70.

Appellant counters that the testifying witnesses had limited interaction with her and therefore limited knowledge of her willingness to discharge her parental duties. Appellant's Brief at 10. Appellant also notes that she completed anger management once and was attending therapy. *Id.* Appellant asserts that her current housing is appropriate for the children.

In summary, the record contains a substantial body of evidence documenting Appellant's failure to perform her parental duties, despite Appellant's protestations to the contrary. DHS filed its petitions for

involuntary termination on December 19, 2014. Prior to that date, Appellant's failure to perform her parental duties persisted for a period well in excess of the six months required in § 2511(a)(1). We discern no abuse of discretion or error of law in the trial court's finding, by clear and convincing evidence, that termination of parental rights was warranted under § 2511(a)(1).

Next, we must consider § 2511(b). We apply the following analysis:

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the *intangible* dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000) (internal citations and quotation marks omitted).

The trial court addressed § 2511(b) as follows:

> In the instant matter, [A.N.M.] resides in a pre-adoptive, medical foster home. The foster mother is a nurse. The foster parents meet her general and medical needs on a daily basis. [A.N.M.] does well in the home and looks to her foster parents to meet all of her needs. The foster parents provide her with love, safety, stability and support. Furthermore, they are the important parental figures in [A.N.M.'s] life. [K.L.M.] and [I.L.M.] reside in a pre-adoptive kinship home. There is no significant bond between [Appellant] and [K.L.M.] and [I.L.M.]. They share their primary parental bond with the foster parents. [K.L.M.] has indicated that she wants to live with the foster

- 8 -

parents. Moreover, the children would not suffer irreparable harm if the parental rights of the mother were terminated.

Trial Court Opinion, 6/30/2016, at 6.

The record supports the trial court's findings. In particular, DHS produced evidence that the children have no significant bond with Appellant. N.T. Hearing, 3/29/16, at 10. Appellant failed to attend to A.N.M.'s medical needs, attending only one of nine medical visits in between the January and March 2016 termination hearing dates. *Id.* at 20. None of the children has a significant bond with Appellant. *Id.* at 21. K.L.M. and I.L.M. do not ask about Appellant and severance of the parental bond would not cause irreparable harm to the children. *Id.* at 21-22. An expert witness testified that Appellant lacks the capacity to provide safety and appropriate parental care. N.T. Hearing, 1/6/15, at 19-20, DHS Exhibit 5.

Based on the foregoing, we discern no abuse of discretion or error of law in the trial court's finding that termination of Appellant's parental rights was warranted under § 2511(b). We therefore affirm the trial court's decrees.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/10/2017